IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORIS YOUNG,                                    6:12-CV-00252-BR

       Plaintiff,                            OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.

DAVID W. HITTLE
388 State Street, Ste 810
Salem, OR 97301
(503) 371-3844

       Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel, Region X, Seattle
**L. JAMALA EDWARDS**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 F$^{ifth}$th Avenue, Ste M/S 211A
Seattle, WA 98104-7075
(206) 615-3749

      Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Loris Young seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's June 8, 2007, application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-34.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter to the Commissioner for the immediate payment of benefits.


## ADMINISTRATIVE HISTORY

      Plaintiff protectively filed an application for DIB on June 8, 2007, alleging she has been disabled since January 26, 2007, because of chronic back, hip, and leg pain.  Tr. 20, 51, 136.  Her application was denied initially on July 27, 2007, and on reconsideration on October 18, 2007.  Tr. 83-87 and 94-96.

2  - OPINION AND ORDER

On December, 19, 2007, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  Tr. 100-01.

On March 11, 2010, the ALJ held a hearing on Plaintiff's DIB claim, and Plaintiff and a vocational expert (VE) testified. Tr. 38-78.

On April 2, 2010, the ALJ issued a decision that Plaintiff is not disabled and is not entitled to DIB.  Tr. 20-27.

On December 29, 2011, the Appeals Council denied Plaintiff's request for review.  Tr. 1-5.  Accordingly, the ALJ's April 2, 2010, decision became the final decision of the Commissioner for purposes of review.  42 U.S.C. 405(h).  *See also Sims v. Apfel,* 530 U.S. 103, 106-07 (2000).

On February 10, 2012, Plaintiff filed a Complaint seeking judicial review of the Commissioner's final decision.


<u>**BACKGROUND**</u>

**I.**   <u>**Plaintiff's Testimony.**</u>

Plaintiff is divorced and has three children ranging in age from 16-19.  Tr. 45.  She lives with her children, her father, and another male.  Tr. 45.

**A.  Education.**

Plaintiff was 38 years old at the time of the hearing. Tr. 46.  She has an Associates Degree in General Studies with specialized corrections training.

3  - OPINION AND ORDER

**B.  Employment.**

In 1995 Plaintiff worked as a cook in a bowling alley and a doughnut shop.  Tr. 60-61, 126.

In 1998 Plaintiff worked for approximately six months at a corrections facility run by the Oregon Youth Authority.  Tr. 47.

In the mid-1990s and during 2000, Plaintiff worked full-time as a process server.  Tr. 58-59.

In 1999 Plaintiff worked in an exotic-fish emporium cleaning fish tanks and feeding fish.  Tr. 69.  She had to help lift fish tanks weighing up to 75 lbs.

Beginning in 2002 Plaintiff worked at a convenience store helping customers, stocking shelves, and sweeping floors. Tr. 49.  She left that job when she returned to school full-time. Tr. 49.  After she graduated she took four-six months off from school and work.  Tr. 50.

In 2002 Plaintiff worked as a cocktail waitress for the Fraternal Order of Eagles, but she was terminated after she refused sexual advances.  Tr. 59-60, 128.

**C.  Health Issues.**

In January 2007 Plaintiff was involved in an automobile accident.  She does not believe she is able to work now because of chronic back, hip, and leg pain and inflammation in her lower back.  Tr. 51-52.  Plaintiff takes pain medication (Gabapentin, Morphine, Tizanidine, and Tylenol 3) to ease her back pain and to

4  - OPINION AND ORDER

make her more mobile.  Tr. 54-55, 61-62, 65.  On bad days
Plaintiff takes extra medication.  Tr. 66.  After Plaintiff has
taken pain medication, her pain level ranges between 5-8 on a 0-
10 scale.  Tr. 62.

Plaintiff suffers from depression and saw a counselor in
2004-2005.  Tr. 53.  She takes medication for depression.
Tr. 54.

 On a typical day Plaintiff waters her indoor plants for
1½-2 hours with breaks.  She does laundry and cooks with the help
of her children.  Tr. 45.  She also lays down for a total of
approximately three hours during the course of the day.  Tr. 65.

## II.  **Lay-Witness Evidence**.

### A.   **Jon L. Archibold, Plaintiff's Boyfriend.**

Archibold has known Plaintiff for 14 years and lived with
her for six years.  He reported Plaintiff's ability to perform
activities of daily living "declined greatly" after an automobile
accident in January 2007.  Tr. 423.  Before then she was active
in school, went to various exercise classes, and enjoyed
activities such as horseback riding, long walks, bowling, and
lifting weights.  Tr. 423.

Plaintiff now is unable to prepare meals without assistance,
to walk up and down stairs without holding onto the rails, or
to grocery shop without the assistance of an electric cart.
Tr. 423.  On a typical day she alternates between sitting and

standing every 30-60 minutes.  After "a couple of hours" of
alternating sitting and standing, she needs to lie down for two-
four hours at a time.  She also has difficulty getting to sleep
at night.  Tr. 423.

**B.  Plaintiff's son**.

Alvin Young, Plaintiff's 17-year-old son, provided a written
report on Plaintiff's behalf.  Tr. 154-61.  He helps Plaintiff to
make meals, to care for and to take her dogs on short walks, and
to do light cleaning.  Tr. 154.  Plaintiff takes care of three
children and her father.  Tr. 155.  Before Plaintiff had health
problems, she played sports and took the dogs for long walks.
Tr. 155.  Although it takes her a long time with numerous breaks,
Plaintiff does some housework, including dusting, washing dishes,
and wiping down counters.  Tr. 156.  She does not do any yard
work.  Tr. 157.  She shops for food, medicine, pet supplies, and
occasionally clothing every week or two.  Tr. 157.

Plaintiff's hobbies include doing puzzles, going to the
park, reading and watching television, and playing bingo once or
twice a month.  Tr. 158.  Plaintiff's social life is limited
because of her pain.  Tr. 159.  Plaintiff has "pain and
discomfort to the point of tears" when she lifts, squats, bends,
stands, reaches, walks, sits, or climbs stairs.  Tr. 159.
Plaintiff is able to walk one block before she needs to rest.
Tr. 159.  She does not have any difficulty paying attention,

6  - OPINION AND ORDER

understanding instructions, handling stress, or getting along with authority figures.  Tr. 159.

Plaintiff was very active before the car accident.  She would like to return to school but "feels she can't because she isn't able to walk around the campus anymore.  She has become "very sad."  Tr. 161.

### III. VE Testimony.

The VE testified Plaintiff's work history includes semi-skilled work as a cashier-checker, which is classified as light work but was "very heavy" as performed.  Plaintiff's work as a corrections officer would "at least" be considered medium, semi-skilled work.  Her work in the fish emporium as performed was heavy, semi-skilled work.  Her work as a process server would generally be considered as light semi-skilled work.  Tr. 71-72.

If Plaintiff could occasionally climb stairs and ramps; stoop; crouch; and frequently balance, kneel, and crawl, Plaintiff would be able to perform her past relevant work as a sales clerk as described in the Dictionary of Occupational Titles, but she could not perform that work as she described her limitations and the job.  Tr. 74.

If Plaintiff were only able to walk, to stand, and to sit for a total of four hours in an eight-hour workday, Plaintiff would not be able to perform any full-time job of substantial gainful activity.  Tr. 74.  If Plaintiff must lie down for three-

four hours a day, only rarely balance, stoop, or climb stairs;
only occasionally reach, handle, and finger; and likely miss
three-four days of work a month, she would not be capable
of maintaining any substantial gainful activity.  Tr. 74-75.

**IV.  Medical Treatment Evidence.**

   **A.  Santiam Memorial Hospital.**

   In November 2002 Plaintiff complained about progressively
worsening pain in her hands, which began as numbness 14 months
earlier.  Tr. 223.  Plaintiff's symptoms were "somewhat
confusing," but they "probably related to carpal tunnel
syndrome."  Tr. 223.

   In January 2003 Plaintiff complained about bi-lateral wrist
pain lasting for several months.  She was diagnosed with
"possible carpal tunnel syndrome" and "anxiety/depression."  She
was provided with hydrocodone/acetaminophen pain medication.
Tr. 223.

   **B.  Family Practitioner Rita Manocha, M.D.**

   From February-August 2007 Dr. Manocha treated Plaintiff on a
monthly basis for lumbago/lumbar back pain following a motor-
vehicle accident.  Tr. 321.

   An initial MRI of Plaintiff's lumbar spine showed a "slight
disc dessication at L2-3 without herniation" and "mild bilateral
facet hypertrophic degenerative change at L3-4, L4-5, and L5-S1."
There was not any "significant central stenosis or neural

8  - OPINION AND ORDER

foraminal narrowing throughout the lumbar spine."    Tr. 315.

In August 2007 Dr. Manocha completed a Medical Source Statement in which she opined Plaintiff would need to take "very frequent breaks" amounting up to five hours of rest (*i.e.,* more frequently than regularly scheduled morning, lunch, and afternoon breaks) in order for Plaintiff's back pain to be relieved during a normal work day.  Tr. 297.  She would be able to sit and/or to stand continuously for less than 15 minutes at a time.  The total amount of time that Plaintiff could stand and walk during an 8-hour  day would be two hours.  Plaintiff should not engage in any sustained lifting, balancing, climbing, or stooping.  She does not have any reaching, handling, or fingering limitations. Tr. 298.

Dr. Manocha declined to opine whether these limitations were temporary or permanent.  Tr. 299.

In September 2007 a lumbar spine MRI did not shown any "evidence of central stenosis or neural foraminal narrowing throughout the lumbar spine."  There were "unchanged mild bilateral facet degenerative changes at L3-4, L4-5, and L5-S1" and "no evidence of acute osseous abnormality and disc herniation."  Tr. 331.

**C.  PT Northwest, LLC.**

Plaintiff received physical therapy for low-back pain two-three times a week from March-May 2007.  During the course of the

therapy Plaintiff reported she had continuing improvement in her
low back pain despite occasional setbacks to the point that she
was able to stand, to wash dishes, to walk her son part-way to
school, and to walk her dog.  Plaintiff reported good progress on
her final visit.  She was able to drive without increased pain
and to squat without using her arms.

At her last therapy session in May 2007, Plaintiff reported
she was sleeping well, was able to walk at least a mile without
increased pain symptoms, and "most of the time" she did not have
any trouble sitting unless the chair was hard.  Tr. 226-68.

### D.  Rehabilitation Specialist John A. French, M.D.

In August and September 2007 Dr. French treated Plaintiff
for lumbar strain resulting from the automobile accident.
Dr. French did not note "any surgical indications  time" and
diagnosed lumbar strain with "no objective compromise" and
"paresthesias" in the lateral thigh.  Tr. 336.

### E.  Primary-Care Specialist Donald R. Olson, M.D.

In October 2007 Dr. Olson began treating Plaintiff for back
pain related to the automobile accident.  On her first visit
Plaintiff described her pain level as ranging between 5-9 on a
1-10 scale.  She had not been helped by conservative treatment.
Tr. 371.  Previous MRIs showed what appeared to be "low-grade
hyperintensity zone at L5-S1."  Tr. 372.

In December 2007 Plaintiff received some relief following

an injection on her left and right side at L4-5.  Tr. 369.

In February 2008 Plaintiff continued to have "distressful" pain down her right leg.  Tr. 367.  An MRI revealed a possible "leaky disc" at L4-5.  Tr. 366.  Two weeks later Plaintiff had pain and low-grade weakness mostly on the right side and weakness in the right foot on straight-leg raising.  Tr. 365.

In March 2008 Dr. Olson noted Plaintiff has "an abnormal spine with an abnormal fusion" and a "very large swollen nerve root on the left side at L5."  Tr. 360.

In April 2008 Dr. Olson concluded Plaintiff has nerve-root irritation at L5-S1 "where there is an abnormality."  Plaintiff's pain levels were "running high in the 8/10 to 9/10 areas with "some elements of neuropathic pain."  Tr. 361.  She had "fluid collection in the right trochanteric bursa and definite radiculitis on the right side both L3 and L4 with objective recordable weakness."  Tr. 360.

In October 2008 Plaintiff's pain medication had "not been covering her pain very well."  Tr. 359.

In November 2008 Dr. Olson noted Plaintiff was doing well on a new regimen of pain medications with average pain at "5/10" and was functioning better than in the past.  Tr. 386.  Dr. Olson also completed a medical-source statement, however, in which he opined Plaintiff needed to lie down to relieve her pain at approximately two-hour intervals for a total of three-four hours

during an eight-hour day in addition to normal lunch and break periods. Her maximum continuous sitting capability was less than 15 minutes and cumulatively was no more than two hours in an eight-hour work day. She was capable of standing and walking for two hours in an eight-hour work day. He recommended she use a cane; rarely carry weights, balance, or climb; and only occasionally reach, handle, and finger with either hand. Tr. 350-51. Dr. Olson opined Plaintiff is not able to stand, to sit, or to walk, on a sustained basis without acute pain because of lumbar radiculitis at L4-5 and concluded her condition was permanent. Tr. 351.

In January 2009 Plaintiff reported her pain was worse even though the pain medication was working well and she did not want to increase it. Tr. 384.

In March 2009 Plaintiff's only pain complaint was muscle cramping in her leg. Tr. 383.

In September 2009 Plaintiff was in the motor-vehicle accident. She had right-sided weakness that was not present before. An MRI showed a "fairly mild" and a "possibly . . . transitional left-sided problem at L5-S1 with pseudoarthrosis." Tr. 377.

### F.  **Pain-Care Specialist Andrew Linn, M.D.**

In October 2009 Plaintiff complained of lower-back pain. Dr. Linn treated her for low-back, hip, and leg pain that had

lasted for two years.  On examination Plaintiff had full range of motion in her lumbar spine.  Her lower back was tender to palpation.  Dr. Linn diagnosed lubarsacral spondylosis without myelopathy, depressive disorder NOS, and sacroilitis.  Tr 409. Later that month Plaintiff complained of lower-back muscle spasms.  She had significant sacroiliac tenderness.  Tr. 411.

In November 2009 Plaintiff was distraught because she had run out of medication.  Tr. 415.  She continued treatment with Dr. Linn for back pain through January 2010.  Tr. 419.

**V.    Medical-Consultation Evidence**.

Linda L. Jensen, M.D., reviewed Plaintiff's medical records on behalf of the Commissioner and opined Plaintiff's allegations of low-back pain are credible based on an MRI showing bilateral facet degenerative changes at L3-4, L4-5, and L5-S1, but Dr. Jensen noted Plaintiff's description of functional limitations is exaggerated.  Tr. 276.  Dr. Jensen found Plaintiff is capable of light work, and her condition is expected to improve.  Tr. 276.

Mary Ann Westfall, M.D., reviewed Plaintiff's medical records and concurred in Dr. Jensen's assessment.  Tr. 341.

## STANDARDS

The initial burden of proof is on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir.

13 - OPINION AND ORDER

2005).  To meet this burden, a claimant must prove her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational

interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## **DISABILITY ANALYSIS**

### **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1521.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See* 20 C.F.R. § 404.1521.

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1521(a)(4(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the Listed Impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454

F.3d at 1052.  The criteria for Listed Impairments are enumerated in 20 C.F.R. part 404, subpart P, appendix 1.  *See also* 20 C.F.R. § 404.1520(d).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  Assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See*

*also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **THE ALJ'S FINDINGS**

In Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from January 26, 2007, the alleged onset date of her disability through March 31, 2008, the date she was last insured. Tr. 22.

In Step Two, the ALJ found Plaintiff at all material times has had a severe physical impairment related to degenerative disc disease. Tr. 22.

In Step Three, the ALJ found Plaintiff's impairments do not meet or equal any listed impairment. The ALJ found Plaintiff has

17 - OPINION AND ORDER

the RFC to lift 20 lbs occasionally and 10 lbs frequently; to stand/sit and/or walk for six hours in an eight-hour workday; frequently balance, kneel, and crawl; and occasionally to stoop, crouch, and climb stairs and ramps.  Tr. 24.

At Step Four, the ALJ concluded Plaintiff is capable of performing her past relevant work as a sales clerk and process server.  Tr. 27.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to DIB.  Tr. 30.


**DISCUSSION**

Plaintiff contends the ALJ erred by failing (1) to give clear and convincing reasons for rejecting Plaintiff's testimony; (2) to give germane reasons for not crediting the lay evidence of Jon L. Archibold, Plaintiff's boyfriend; and (3) to give full weight to the opinions of Plaintiff's treating physicians, Drs. Manocha and Olson.

## I.   **Plaintiff's Credibility.**

The ALJ found Plaintiff's testimony as to the persistence, intensity, and limiting effects of her chronic back pain was not credible because it was inconsistent with the objective medical evidence derived from MRIs and a lumbar bone scan that reflected Plaintiff responded well to and had improved as a result of physical therapy.  Tr. 25-26.  In addition, the ALJ found Plaintiff's daily activities such as cooking, doing

housework, and shopping and her ability to maintain personal
hygiene were inconsistent with her stated physical limitations.
Tr. 25.

**A.  Standards.**

In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986),
the Ninth Circuit established two requirements for a claimant to
present credible symptom testimony:  The claimant must produce
objective medical evidence of an impairment or impairments, and
she must show the impairment or combination of impairments could
reasonably be expected to produce some degree of symptoms.  The
claimant, however, need not produce objective medical evidence of
the actual symptoms or their severity.  *Smolen,* 80 F.3d at 1284.
If the claimant satisfies the above test and there is not any
affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester,* 81 F.3d 821, 834 (9th Cir.
1995)).  General assertions that the claimant's testimony is not
credible are insufficient.  *Id.*  The ALJ must specifically
identify the testimony that is not credible and the evidence that
undermines the claimant's complaints.  *Parra,* 481 F.3d at 750
(quoting *Lester,* 81 F.3d 821 at 834).

**B.  Analysis.**

1.  <u>MRI Evidence</u>.

19 - OPINION AND ORDER

The medical record reflects Plaintiff had multiple MRIs ordered by different physicians, including the MRI relied on by the ALJ in making his credibility determination.  Dr. Olson treated Plaintiff for two years and had previously reviewed her MRIs, including the MRI that the ALJ relied on in making his adverse credibility determination.  After his review of the MRIs together with the diagnostic testing he performed during the course of his treatment of Plaintiff, Dr. Olson concluded "Plaintiff is not able to stand, sit, or walk, on a sustained basis without acute pain because of lumbar radiculitis at L4-5. Her condition is permanent."  Tr. 351.  The Court notes Dr. Manocha, who treated Plaintiff before Dr. Olson, offered an opinion as to Plaintiff's functional physical limitations that was generally consistent with Dr. Olson's opinion.  Tr. 297-99.

2.  <u>Plaintiff's Daily Activities</u>.

The ALJ relied on the lay evidence presented by Plaintiff's son and her boyfriend when he concluded Plaintiff was "far less limited in her daily activities than she alleges."  The ALJ also based his conclusion on Plaintiff's testimony that she took care of her father and three children, watered plants, let her dogs out frequently, put laundry in the washer and the dryer and folded the clothes, and cooked "part of the family's meals." Tr. 25.  The ALJ noted Plaintiff takes care of her personal hygiene, shops with a companion, manages the household, pays the

20 - OPINION AND ORDER

bills, uses the telephone and email, and attends her children's concerts. Tr. 25.

The Court, however, finds the reasons given by the ALJ for not crediting Plaintiff's testimony are not clear and convincing in light of the medical evidence from Plaintiff's treating physicians, Dr. Manocha and Dr. Olson, which tends to support Plaintiff's testimony as to the severity of her physical impairments. Moreover, as set forth below, the Court concludes the testimony of Plaintiff's son and her boyfriend support her testimony regarding her physical limitations rather than undermine it.

Accordingly, the Court concludes the ALJ erred when he found Plaintiff's testimony was not credible based on the purported inconsistency between Plaintiff's testimony regarding the severity of her impairments and the evidence in the medical records because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  <u>Lay-Witness Evidence</u>.

As noted, Plaintiff's boyfriend, Jon Archibold, reported Plaintiff was very active before the 2007 automobile accident, but since that time Plaintiff rarely engages in outdoor activities. He also stated he and her children do most of the chores around the house.

The ALJ found this testimony was not credible because it was inconsistent with Plaintiff's testimony regarding her daily living activities.  Tr. 26-27.

**A.  Standards.**

When determining whether a claimant is disabled, the ALJ must consider lay-witness evidence concerning a claimant's limitations and ability to work.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  If the ALJ wishes to discount the evidence of lay-witnesses, he "must give reasons that are germane to each witness." *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).  *See also Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)(improperly rejected lay-evidence testimony is credited as a matter of law).

Although the ALJ's reasons for rejecting lay evidence testimony must be "specific," the ALJ need not discuss every witness's testimony on an individualized basis.  *Molina*, 674 F.3d at 1114.  *See also Stout v. Comm'r, Social Sec., Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).  "[I]f the ALJ gives germane reasons for rejecting [evidence] by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Id.  See also Valentine v. Comm'r Soc. Sec. Admin.*, 674 F.3d 685, 690 (9th Cir. 2009).

**B.  Analysis.**

The Court has already concluded the ALJ's reasons for not

crediting Plaintiff's testimony regarding her daily activities were legally insufficient.  The Court finds the lay evidence submitted by Plaintiff's boyfriend corroborates Plaintiff's testimony, and the Court does not find any significant inconsistency between the Plaintiff's testimony and her boyfriend's statements.

Accordingly, the Court concludes the ALJ erred when he discredited the lay evidence offered by Plaintiff's boyfriend because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## III. __Medical-Treatment Evidence.__

The ALJ rejected the opinions of treating physician Rita Manocha, M.D., and Donald Olson, M.D., that Plaintiff had substantial limitations in her ability

### A.  __Standards__.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are supported by substantial evidence in the record.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting

*Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir. 1995)).  The
opinion of a treating physician is "given greater weight than the
opinions of other physicians."  *Kelly v. Astrue,* No. 10–36147,
2012 WL 767306, at *1 (9th Cir. 2012)(quoting *Smolen v. Chater,*
80 F.3d 1273, 1285 (9th Cir. 1996)).

**B.  Analysis.**

1.  Dr. Manocha.

Dr. Manocha treated Plaintiff for a period of six months
in 2007.  Dr. Manocha found Plaintiff would need to lie down or
rest in a supine position for a total of five hours, sit for only
three hours, and stand for only two hours during an eight-hour
work day.  The ALJ, however, found those limitations were
inconsistent with the medical records and diagnostic studies that
reflect Plaintiff's degenerative disc disease is only mild, that
Plaintiff had good motor strength in her lower extremities with
no radiculopathy, and that Plaintiff's medications had helped to
alleviate the pain.

The Court notes, however, the record reflects
Plaintiff's allegedly disabling impairments are in her lumbar
spine area rather than in her lower extremities.

b.  Dr. Olson.

Dr. Olson treated Plaintiff from October 2007 until
September 2009.  Dr. Olson, who began treating Plaintiff one
month after Plaintiff stopped treatment with Dr. Manocha, made

findings remarkably similar to those of Dr. Manocha's regarding Plaintiff's capacity to stand and to sit during an eight-hour workday.  The ALJ, however, found Dr. Olson's opinion was inconsistent with his comment that Plaintiff did well with new medications and had pain relief after a "facet injection." Tr. 26.

On this record the Court concludes the fact that Plaintiff obtained some pain relief with medications does not undermine the opinions of Plaintiff's two primary treating physicians as to Plaintiff's inability to engage in substantial gainful activity, particularly since those physicians treated Plaintiff on a regular basis for a combined total of approximately 2½ years.

Accordingly, for these reasons, the Court concludes the ALJ erred when he rejected the medical opinions of Plaintiff's two primary treating physicians because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.


## **REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 121 S. Ct. 628 (2000).

Having found the ALJ erred when he improperly discredited

25 – OPINION AND ORDER

the opinions of Drs. Olson and Manocha, the Court must determine whether to remand this matter for further proceedings or to remand for the immediate calculation of benefits.  The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *See, e.g.*, *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012).  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and an immediate award of benefits directed.  *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).  The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id*.  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *See, e.g.*, *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

26 - OPINION AND ORDER

Because the Court credits the opinions of Plaintiff's treating physicians, Drs. Olson and Manocha, regarding Plaintiff's physical limitations, and thus, her RFC, it is clear the ALJ would have to award benefits to Plaintiff based on those opinions.

Accordingly, the Court, in the exercise of its discretion, concludes this matter should be remanded to the Commissioner for the immediate payment of disability insurance benefits. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for the immediate payment of benefits.

IT IS SO ORDERED.

DATED this 20th day of February, 2013.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

27 - OPINION AND ORDER